**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 7, 2024**

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

———————————————————

STERLING OWENS,

    Plaintiff - Appellant,

v.

UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KANSAS,

    Defendant - Appellee.

No. 23-3048
(D.C. No. 2:21-CV-02185-KHV)
(D. Kan.)

———————————————————

# JUDGMENT

———————————————————

Before **BACHARACH**, **BALDOCK**, and **MURPHY**, Circuit Judges.

———————————————————

This case originated in the District of Kansas and was argued by counsel.

The judgment of that court is affirmed.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

FILED
United States Court of Appeals
Tenth Circuit

May 7, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

STERLING OWENS,

    Plaintiff - Appellant,

v.

UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KANSAS,

    Defendant - Appellee.

No. 23-3048

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:21-CV-02185-KHV)**

_____

Bert S. Braud (Cooper S. Mach with him on the brief) of The Popham Law Firm, Kansas City, Missouri for Plaintiff-Appellant.

Ryan B. Denk (Spencer A. Low with him on the brief) of McAnany, Van Cleave & Phillips, Kansas City, Kansas for Defendant-Appellee.

_____

Before **BACHARACH**, **BALDOCK**, and **MURPHY**, Circuit Judges.
_____

**BALDOCK**, Circuit Judge.
_____

Plaintiff Sterling Owens' two-attorney trial team tried his Title VII workplace discrimination lawsuit in front of a federal jury. Plaintiff's lead attorney had conducted all pretrial litigation and was expected to handle most of Plaintiff's witnesses and

closing argument. Midway through the four-day trial, Plaintiff's lead attorney contracted COVID-19 and resorted to remote participation for the remainder of trial. The jury found Defendant not liable on all counts. Plaintiff asks us to vacate the jury's verdict and hold the district court abused its discretion in denying his motion for a mistrial and new trial. We decline to do so, emphasizing Plaintiff failed to show he was prejudiced by the district court's rulings. Accordingly, we exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.

Plaintiff is an African American electric "troubleman lineman." He worked for the Wyandotte County, Kansas Board of Public Utilities ("BPU") beginning in 2013. BPU has a formal policy requiring all employees to maintain their primary residence—defined as "where the employee spends the majority of his or her non-work hours"—in Wyandotte County. Pursuant to BPU policy, if someone makes a residency complaint against an employee, BPU will actively investigate and immediately terminate the employee if it finds he or she violated the policy.

Plaintiff is also a real estate investor. He owned thirteen residential properties in the Kansas City metro area. Twelve were in Wyandotte County and one was in neighboring Leavenworth County. Plaintiff's Leavenworth property was a newly constructed home sitting on six acres of land valued at $439,500. Meanwhile, the property he reported as his primary residence was a modest house in Wyandotte County valued at just $11,000. Plaintiff maintained that he moved into the smaller house in 2016 when he and his wife experienced marital difficulties. Although he visited

frequently, Plaintiff alleged only his wife and kids resided in the Leavenworth home full time.

In July 2019, a group of anonymous employees complained to BPU that Plaintiff was violating the residency policy. BPU Human Resources Compliance Manager Tammy Torrez began a preliminary investigation into the complaint. She obtained Plaintiff's property records from the County Appraiser's office, reviewed Plaintiff's electric and water utility usage records, and determined further investigation was necessary. Accordingly, BPU hired a private investigator to surveil Plaintiff and the two properties in question. The investigator surveilled Plaintiff on approximately fourteen dates between September 2019 and March 2020. BPU's investigation ended on September 11, 2020, when HR Director Dennis Dumovich told Plaintiff that BPU was unable to substantiate or disprove Plaintiff's residency and no disciplinary action would be taken.

Plaintiff contends the investigation's length and intensity was discriminatory based on his race. Plaintiff first raised his concerns in an April 2020 letter to BPU. Plaintiff told BPU he felt "targeted and discriminated against" by the investigation. App. Vol. I at 46. He stated he was subjected to a "high-stress environment" for six months with his "employment being held over [his] head." App. Vol. III at 45. As a result, Plaintiff began seeing a psychiatrist and taking psychiatric medication to deal with the investigation's effects on his mental health. He also experienced physical reactions including hair loss and insomnia. One week later, Plaintiff filed a formal workplace discrimination complaint with Dumovich. BPU hired outside counsel to

conduct an internal investigation into the matter. The investigating attorney ultimately found no evidence of harassment or discrimination. BPU relayed these results to Plaintiff, and he in turn filed a charge of discrimination with the EEOC alleging race discrimination and hostile work environment. In January 2021, the EEOC granted Plaintiff the right to sue in federal district court. Three months later, Plaintiff filed the instant Title VII lawsuit in the District of Kansas alleging race discrimination, retaliation, and hostile work environment.

The case proceeded to a four-day jury trial in November 2022. Plaintiff was represented by two attorneys. His first-chair counsel, Bert Braud, prepared the complaint, conducted all discovery, and handled all pretrial litigation by himself. Plaintiff's second-chair counsel, Cooper Mach, entered his appearance approximately one month before trial. According to Plaintiff, Mach did not begin reviewing the case until the week before trial because he only planned to put on two witnesses. As such, Plaintiff maintains Mach "was not expected to have the same grasp of all the facts and nuances of a difficult race discrimination case" as Braud. App. Vol. I at 100.

The trial did not go as Plaintiff's counsel planned. Trial began on Monday, November 14. Braud conducted voir dire, delivered Plaintiff's opening statement, and examined Tammy Torrez. On Tuesday, Braud defended Torrez's cross examination, conducted redirect, and examined another witness. Mach examined one witness and conducted a partial examination of Dennis Dumovich. After proceedings ended Tuesday, Braud tested positive for COVID-19. From then on, Braud quarantined in his home and did not return to the courthouse for the remainder of trial. On Wednesday

4

morning, Mach orally moved for a mistrial on grounds that proceeding without lead counsel would prejudice Plaintiff's case. The district court denied Plaintiff's motion, finding that a mistrial was not warranted because: (1) Plaintiff had two attorneys; (2) Mach was "doing great"; (3) there were only a handful of witnesses left to examine; and (4) Braud was able to share his witness examination notes and consult with Mach in real time by videoconference. App. Vol. III at 49, 53-54. The district court even gave Braud the option to examine witnesses remotely. Trial proceedings continued with Mach finishing his examination of Dumovich, examining Plaintiff, and delivering Plaintiff's closing argument. Defendant did not put on any witnesses. On Thursday afternoon, the jury found Defendant not liable on all counts. In total, Mach handled less than two full days of trial proceedings without Braud's physical presence in the courtroom.

Eleven days after the jury rendered its verdict, Plaintiff moved for a new trial under Federal Rule of Civil Procedure 59. In his motion, Plaintiff alleged two specific instances where Braud's absence prejudiced his case at trial. First, Plaintiff argued Mach was unprepared to object to defense counsel's comments in his closing argument that BPU employee Eric Clark made the initial residency complaint against Plaintiff, not an anonymous source. Plaintiff contends this comment misstated the record and prejudiced him because Clark was African American, and thus, according to Plaintiff, less likely to discriminate against Plaintiff based on race. Moreover, Clark passed away before trial and was consequently unavailable to be a witness. Second, Plaintiff argued Mach's relative lack of experience led him to engage with Defendant's

5

irrelevant tangent into relitigating the merits of Plaintiff's residency investigation instead of focusing on Plaintiff's allegations that the investigation was discriminatory. The district court rejected these arguments and concluded Braud's absence did not prejudice Plaintiff. The court explained that defense counsel's comment during closing argument was an accurate statement of the record because Clark was the first to relay the anonymous complaint to Torrez. The court also held the details of BPU's residency investigation were relevant to the issues before the jury. The district court denied Plaintiff's motion, and he now appeals.

## II.

We review the district court's denial of Plaintiff's motion for a mistrial and new trial for abuse of discretion. *Hayes v. SkyWest Airlines*, 12 F.4th 1186, 1193 (10th Cir. 2021) (citing *United States v. Meridyth,* 364 F.3d 1181, 1183 (10th Cir. 2004) (motion for mistrial); *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1296 (10th Cir. 1998) (motion for new trial)). "A district court abuses its discretion if its ruling is arbitrary, capricious, or whimsical, or arises from an error of law or a clear error of fact." *Id*. at 1194 (citation omitted). "Both motions for mistrial and new trial call for an examination of the prejudicial impact of an error or errors when viewed in the context of an entire case." *United States v. Gabaldon*, 91 F.3d 91, 94 (10th Cir. 1996). The district court may only disturb the jury's verdict if the alleged prejudicial errors impaired the

movant's right to a fair and impartial trial.[1]  *Hayes*, 12 F.4th at 1194.  We give particular deference to the district court's conclusions because the presiding trial judge is best positioned to evaluate the prejudicial impact of alleged trial errors and whether they warrant a new trial.  *Id*.

### III.

Plaintiff argues the district court abused its discretion by denying his motion for a mistrial and requiring second-chair counsel Mach to take over for the more experienced and better-prepared first-chair counsel Braud.  He further asserts Mach's substitution for Braud prejudiced his right to a fair and impartial trial because Mach was unprepared to respond to Defendant's alleged theory that BPU's investigation began with a complaint from Eric Clark.  Plaintiff contends the district court also abused its discretion by denying his motion for a new trial on the same grounds.  We disagree.

Plaintiff acknowledges there is little precedent for this issue in the Tenth Circuit.  As such, he asks us to follow *Smith-Weik Mach. Corp v. Murdock Mach. & Eng'g Co.*, 423 F.2d 842 (5th Cir. 1970).[2]  *Smith-Weik* involved a "hotly contested" contract

---

[1] Although there may be other possible grounds for granting a new trial, Plaintiff only argued prejudicial trial error as the basis for his motion for a new trial.  *See* App. Vol. I at 104-113.

[2] Plaintiff also cites several nonbinding cases for the proposition that the presence of COVID-19 in the courtroom required the district court to grant a mistrial.  But another district court's discretionary decision to grant a mistrial in a separate case cannot establish that this district court necessarily abused its discretion by reaching the opposite conclusion.  Along the same lines, Plaintiff argues the District of Kansas violated its own "COVID-19 protocols" by failing to disqualify Plaintiff's entire legal

dispute between two companies with three "complicated" legal issues, including accord and satisfaction law, anticipatory profits, and punitive damages. *Id*. at 844-845. The parties tried the case in federal district court in Dallas, Texas. *Id*. at 843. Counsel for plaintiff was based in Dallas. *Id*. The defendant's lead counsel was based in Tulsa, Oklahoma, with support from local counsel in Dallas. *Id*. at 843 n.1. Lead counsel handled the pretrial litigation, including several depositions that local counsel had never reviewed. *Id*.

Three days before the scheduled bench trial, the defendant's lead counsel became ill with the flu. *Id*. Lead counsel prepared and submitted a motion for continuance with a supporting affidavit. *Id*. Then, on February 10—the date the case was set for bench trial—the court heard the plaintiff's late motion for a jury trial. *Id*. Over the defendant's objection, the court granted the motion, transferred the case to its jury docket, and placed it near the front of the line—thereby unexpectedly advancing the trial date. *Id*. Three days later, on the morning of February 13, the court informed the defendant's local counsel that the jury trial would begin that same afternoon. *Id*. Lead counsel remained ill in Tulsa. *Id*. Nevertheless, the court denied the defendant's motion for continuance. *Id*. But the court acquiesced to resetting the jury trial to the following morning so local counsel could fly to Tulsa to obtain the materials he needed to try the case. *Id*. Local counsel arrived in Tulsa at 10:00 p.m. that night, reviewed

---

team for being in close proximity to Braud. Applt's Br. at 12. We lack the requisite factual record to fully evaluate Plaintiff's claim. Even if that information was in the record, the district court is better equipped to interpret and apply its own COVID-19 policy than this panel.

the case files with bedridden lead counsel until 2:30 a.m., flew back to Dallas, and tried the case the following morning with no sleep. *Id*. The jury returned a verdict for the plaintiff for the full recovery sought plus punitive damages. *Id*.

The Fifth Circuit reversed and remanded for a new trial. *Id*. at 845. The court pronounced that in the Fifth Circuit, illness of counsel *in certain cases* constitutes an exception to the general rule that a district court's denial of a motion for continuance shall not be reversed unless abuse is shown. *Id*. at 844-45. The court concluded the case fell within the exception because "principal counsel was ill, local counsel was relatively unprepared, the time for continuance was short, and the case was complicated." *Id*. at 845. The court further explained the trial record showed "[t]he illness of the defendant's principal attorney and local counsel's relative unfamiliarity with the case tipped the scales so heavily in favor of the plaintiff as to effectually deprive the defendant of its rightful day in court." *Id*. at 844. Critically, the court held the district court's refusal to continue the case severely prejudiced the defendant's right to a fair trial. *Id*.

*Smith-Weik* is factually distinguishable and does not negate this Circuit's requirement that Plaintiff demonstrate prejudicial trial error to be entitled to a new trial. In less than twenty-four hours, defense counsel in *Smith-Weik* had to travel from Texas to Oklahoma to obtain discovery from lead counsel, learn a complex case the night before trial, and return to Texas to try the case with no sleep. By contrast, Mach worked for the same law firm as lead counsel, had access to all relevant case materials, and was based in the forum state. He entered his appearance more than a month before

9

trial with the intent of jointly trying the case with lead counsel.  These are meaningful distinctions.  Local counsel's unpreparedness for a complicated case in *Smith-Weik* "effectually deprive[d] the defendant of its rightful day in court" and "severely prejudiced the defendant." *Id*. at 844.  Conversely, Mach had already completed half of Plaintiff's trial with lead counsel and was "doing great" by the district judge's evaluation.[3]  App. Vol. III at 49.  Moreover, Braud appeared for the remainder of the trial by videoconference and conferred with Mach and the rest of the trial team in real time.[4]  It is not enough that Plaintiff might have fared better with Braud as in-person trial counsel.  Plaintiff must show that proceeding without Braud had a prejudicial impact, and that the district court abused its discretion in reaching the opposite conclusion.  *Gabaldon*, 91 F.3d at 94.  Nothing in *Smith-Weik* alters this calculus.[5]

So we turn to Plaintiff's only concrete allegation that he suffered trial prejudice from Braud's absence.  Plaintiff asserts Mach did not know the case well enough to "address the nuance of blaming another African American supposedly involved in

---

[3] Even if Braud had become ill *before* trial and Plaintiff had moved for a continuance rather than a mistrial, he would still be required to demonstrate prejudice.  *See United States v. West*, 828 F.2d 1468, 1469 (10th Cir. 1987) ("We review the district court's decision to deny a continuance for abuse of discretion and do not reverse unless we conclude that the denial was arbitrary or unreasonable and materially prejudiced the appellant.").

[4] Although Braud states he was too ill to examine witnesses, he affirmed he "was able to participate remotely" and "text[] the on-site trial team."  App. Vol. I at 102.

[5] Nor are we convinced by Plaintiff's argument that he was denied his "counsel of choice."  Applt's Br. at 15.  Plaintiff relies on three Kansas district court opinions that address disqualification of counsel on ethical grounds.  They are inapposite and do not alter Plaintiff's burden to show prejudicial trial error.

10

initiating the investigation." Applt's Br. at 17. Specifically, Plaintiff takes issue with these comments in Defendant's closing argument:

> So we'll talk briefly, and I know you've heard about this evidence extensively at this point, but, yes, I mean, the evidence is uncontroverted as to how this—this complaint came to light. Eric Clark, plaintiff's supervisor, came forward and reported that he had a number of his employees who were complaining that the—saying, 'Hey, why do I have to live in the county when [Plaintiff] doesn't? We all know he doesn't live in the county and you're not making us comply but you're making him comply? It's not fair.' So Mr. Clark, an African-American supervisor, comes to Ms. Torrez, reports that. Ms. Torrez follows up with Mr. Clark's supervisor, Jeremy Ash, who . . . basically confirms that information . . .

App. Vol. IV at 89. Plaintiff argues Mach's limited pretrial involvement in the case prevented him from making an objection to defense counsel's misstatement of the evidence—an objection Braud would have made. Plaintiff, however, fails to explain how Mach was unprepared to make this objection. He makes no representation, for example, that Mach was unaware Clark was African American.

More importantly, we agree with the district court that defense counsel did not misstate the evidence. It was not necessarily false to say Clark made the complaint because he was the first to relay the anonymous employees' complaints to BPU's human resources. Defense counsel explicitly acknowledged Clark's complaint was a response to "a number of his employees who were complaining" about Plaintiff's residency. App. Vol. IV at 89. Even if it could be construed as a misstatement, the district court held Plaintiff did not show Mach's failure to object to this relatively

11

minor detail in defendant's closing argument had any impact on the jury's verdict. We see nothing in the record that justifies second guessing the district court's conclusion.[6]

***

We **AFFIRM** the district court's denial of Plaintiff's motion for a mistrial and motion for a new trial.

---

[6] Plaintiff also argues Mach's unfamiliarity with the case precluded him from responding to defense counsel's comment in closing that Plaintiff could have called Jeremy Ash to testify that BPU's investigation began with an anonymous complaint. This new factual theory raised for the first time on appeal is waived, and regardless, fails on the merits for the same reasons. *Little v. Budd. Co., Inc.*, 955 F.3d 816, 821 (10th Cir. 2020) (absent extraordinary circumstances, a new theory raised on appeal is waived, even if it relates to a preserved argument).